IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ANTHONY BAZURTO,  )   No. C 06-6243 SBA (PR)
           )
   Plaintiff,  )   **ORDER DISMISSING ACTION**
           )
v.          )
           )
RICHARD J. KIRKLAND, Warden, et al., )
           )
   Defendants. )
_____)

## INTRODUCTION

Plaintiff Anthony Bazurto is a state prisoner currently incarcerated at the California Correctional Institution. He has filed this civil rights action under 42 U.S.C. § 1983. He has been granted leave to proceed in forma pauperis.

Venue is proper in this Court because the injuries complained of occurred in Del Norte County, which is located within the Northern District of California. See 28 U.S.C. §§ 84, 1391.

## BACKGROUND

Plaintiff alleges that Defendants have violated their own rules and regulations by refusing to transfer him from a Level IV, 180-degree-design facility to a Level IV, 270-degree-design facility. In his complaint, Plaintiff identifies this policy only as "Amended Director's Rule." In a letter to the Court, which Plaintiff attaches as Exhibit A to his complaint, he cites to Cal. Code Regs. tit. 15, § 3341.5(c)(5) as the source of this policy. He also refers to the settlement agreement in Castillo v. Alameida, No. C 94-2847 MJJ (N.D. Cal. 2004).[1] Specifically, he alleges that these rules and regulations provide that, upon release to the general population from the Security Housing Unit (SHU), an inmate is subject to an observation period of no more than twelve months, after which he shall be reclassified and transferred to the least restrictive facility commensurate with his

---

[1] Plaintiff incorrectly referred to the case number of the action with the settlement agreement as No. C 94-2874 MJJ (Compl., Ex. A, June 20, 2006 Letter at 1.) However, the Court has determined that the correct case number is No. C 94-2847 MJJ.

classification score.[2]

Plaintiff claims that he was released from the SHU to the general population on October 10, 2001. On July 1, 2005, he filed a 602 inmate appeal requesting a transfer to a 270-degree facility, which was denied at the second formal level of review by Defendant Kirkland and at the Director's level of review by Defendant Grannis. In this action, Plaintiff seeks unspecified compensatory and punitive damages, court costs and an injunction ordering Defendants to arrange his transfer to a 270-degree facility.

**STANDARD OF REVIEW**

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). In its review, the court must identify cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. See id. § 1915A(b)(1),(2). Pro se pleadings must, however, be liberally construed. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

**DISCUSSION**

Plaintiff essentially claims that he has been deprived of a liberty interest without due process of law in violation of the Fourteenth Amendment to the U.S. Constitution.

Interests that are procedurally protected by the Due Process Clause may arise from two

---

[2] Neither the regulation nor the settlement agreement referenced in Plaintiff's June 20, 2006 letter to the Court include the policy upon which Plaintiff's claim is predicated: that Defendants are required to house him in the least restrictive facility commensurate with his classification score. The settlement agreement deals only with procedures for validating an inmate's status as an active gang member. As quoted below, the regulation provides only that an inmate shall be housed in a facility commensurate with his classification score.

2

sources -- the Due Process Clause itself and laws of the states. See Meachum v. Fano, 427 U.S. 215, 223-27 (1976). Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they are authorized by state law. See Sandin v. Conner, 515 U.S. 472, 484 (1995) (citing Vitek v. Jones, 445 U.S. 480, 493 (1980) (transfer to mental hospital), and Washington v. Harper, 494 U.S. 210, 221-22 (1990) (involuntary administration of psychotropic drugs)). A state may not impose such changes without complying with minimum requirements of procedural due process. See id.

Deprivations that are less severe or more closely related to the expected terms of confinement may also amount to deprivations of a procedurally protected liberty interest, but only provided that state statutes or regulations narrowly restrict the power of prison officials to impose the deprivation, i.e., give the inmate a kind of right to avoid it, and that the liberty in question is one of "real substance." See Sandin, 515 U.S. at 477-87. In the latter and more common state law scenario, "real substance" will generally be limited to freedom from (1) restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," id. at 484, or (2) state action that "will inevitably affect the duration of [a] sentence," id. at 487.

A court presented with a procedural due process claim by a prisoner should first ask whether the alleged deprivation is one so severe that it implicates the Due Process Clause itself or one less severe that implicates an interest created by state statute or regulation. If it implicates neither, no procedural due process claim is stated. If it implicates the Clause itself, the court must determine what process is due. If the deprivation implicates an interest created by state statute or regulation, the court must next ask whether the applicable state statute or regulation narrowly restricts the power of prison officials to impose the deprivation. Bonin v. Calderon, 77 F.3d 1155, 1161-62 (9th Cir. 1996) (looking first to statutory language and finding no state created constitutionally protected interest in choosing method of execution because state statute does not guarantee prisoner choice).

Next, the court must ask whether the deprivation is one of "real substance." See, e.g., Jones v. Moran, 900 F. Supp. 1267, 1273-74 (N.D. Cal. 1995) (Wilken, J.) (adopting Justice Breyer's two-prong analysis of Sandin majority opinion). Only if the answer is yes to both prongs of this

inquiry does the state statutory provision create a liberty interest entitled to procedural due process. See, e.g., Myron v. Terhune, 476 F.3d 716, 718-19 (9th Cir. 2007) (classification for California Level IV prison rather than Level III prison not shown to be an atypical and significant hardship). The court then must determine what process is due.

Here, Plaintiff's alleged right to be housed in the least restrictive facility commensurate with his classification score is not directly protected by the Due Process Clause. In Meachum, the Supreme Court held that the Due Process Clause was not implicated when prisoners were transferred from a medium-security prison to a maximum-security facility with substantially less favorable conditions. The Court stated:

> Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose. That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules.

Meachum, 427 U.S. at 225. In Plaintiff's case, he is complaining, not of a transfer to a more restrictive institution, but of Defendants' refusal to transfer him to a less restrictive one. Given the holding in Meachum, Defendants' decision is clearly "within the normal limits or range of custody which the conviction has authorized the State to impose." Id.

If Plaintiff's deprivation does not directly implicate the Due Process Clause, the Court must then inquire if it implicates a liberty interest created by state law or regulation. Plaintiff relies on Cal. Code Regs. tit. 15, § 3341.5(c)(5), which, at the time his lawsuit was filed,[3] stated:

> As provided at section 3378(e), the Departmental Review Board (DRB) may authorize SHU release for prison gang members or associates categorized as inactive. The term inactive means that the inmate has not been involved in gang activity for a minimum of six (6) years. Inmates categorized as inactive who are suitable for SHU release shall be transferred to the general population of a Level IV facility for a period of observation that shall be no greater than 12 months. Upon completion of the period of observation, the inmate shall be housed in a facility commensurate with his or her safety needs. In the absence of safety needs, the inmate shall be housed in a facility consistent with his or her classification score. The DRB is authorized to retain an inactive gang member or associate in a SHU based on the inmate's past or present level of influence in the gang, history of misconduct, history of criminal

---

[3] Plaintiff filed his complaint on October 3, 2006. Section 3341.5(c)(5) has not been substantively amended since then.

4

>activity, or other factors indicating that the inmate poses a threat to other inmates or institutional security.

Cal. Code Regs. tit. 15, § 3341.5(c)(5) (2006). The regulation does not mandate, or even advise, that prisoners be housed in the least restrictive facility commensurate with their classification. It imposes no restrictions on prison officials' authority to assign Plaintiff to any facility, regardless of how restrictive, except that it be one commensurate with his classification score. Therefore, it cannot create the alleged liberty interest in being housed in a 270-degree facility.

Even if California prison regulations did create such an interest, it would only be protected by the Fourteenth Amendment if it is a sufficiently substantial interest. See Sandin, 515 U.S. at 478, 480; Myron, 476 F.3d at 718. Whether a liberty interest created by prison regulations is substantial enough to merit protection is determined by focusing on the nature of the deprivation. Sandin, 515 U.S. at 481-84. "[T]hese interests will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. The Supreme Court held that assignment to a disciplinary segregation unit, even when later found unjustified, does not constitute an atypical hardship where it caused no change in the length of the prisoner's sentence. Id. at 487. The Ninth Circuit has held that "administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence." May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (citing Toussaint v. McCarthy, 801 F.2d 1080, 1091-92 (9th Cir.1986)). The Ninth Circuit has also held that classification of an inmate to a Level IV instead of a Level III facility does not present "atypical and significant hardship." Myron, 476 F.3d at 718.

In the instant case, Plaintiff is not challenging his assignment to a higher security level facility or to administrative or disciplinary segregation, but only Defendants' decision not to transfer him to a more favorable facility of the same security classification. His alleged liberty interest and the concomitant deprivation are less substantial than those in Sandin, May and Myron. Therefore, even if California prison regulations did create such a liberty interest, it is not substantial enough to be protected by the Fourteenth Amendment.

5

As mentioned above, to state a claim under 42 U.S.C. § 1983, Plaintiff must first allege that a right protected by the Constitution or laws of the United States was violated. For the reasons above, the Court finds that Plaintiff has not done so in his complaint. Accordingly, Plaintiff's complaint is DISMISSED WITH PREJUDICE for failure to state a claim upon which relief may be granted.

### **CONCLUSION**

In light of the foregoing, Plaintiff's complaint is DISMISSED WITH PREJUDICE for failure to state a claim upon which relief may be granted.

The Clerk of the Court shall enter judgment and close the file.

IT IS SO ORDERED.

DATED: 7/14/09

_Saundra B Armstrong_
SAUNDRA BROWN ARMSTRONG
United States District Judge

P:\PRO-SE\SBA\CR.06\Bazurto6243.dismiss.frm6

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

ANTHONY BAZURTO,

        Plaintiff,

  v.

RICHARD J. KIRKLAND et al,

        Defendant.

Case Number: CV06-06243 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on July 14, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Anthony Bazurto C-30540
California Correctional Institution
P.O. Box 1902
Tehachapi, CA 93581

Dated: July 14, 2009

Richard W. Wieking, Clerk
By: LISA R CLARK, Deputy Clerk

P:\PRO-SE\SBA\CR.06\Bazurto6243.dismiss.frm7